UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

HASTINGS MANUFACTURING
COMPANY,

        Plaintiff,

v.

MELTON SALES AND SERVICE,
INC, d/b/a MELTON INDUSTRIES,

        Defendant.
_____/

Case No. 5:05-CV-32

Hon. Richard Alan Enslen

**OPINION**

Pending before this Court are three summary judgment motions: Plaintiff Hastings Manufacturing Company's Motion for Partial Summary Judgment; Defendant Melton Sales and Service, Inc.'s Counter-Motion for Summary Judgment; and Defendant's Motion for Summary Judgment and Motion *in Limine*. Oral argument is unnecessary since the motions may be readily decided on the briefing. *See* W.D. Mich. L. Civ. R. 7.2(d).

**BACKGROUND**

This is a diversity suit--between a Michigan[1] based corporation and a non-Michigan defendant corporation[2] involving a claim for damages exceeding $75,000.[3] The Complaint was

---

[1] According to Plaintiff's Sales Agency Agreement with its sales agent, Plaintiff is a corporation organized under Michigan law with its principal place of business in Michigan.

[2] Although the parties have not expressly stated so, presumably Defendant is both incorporated within New Jersey and based in New Jersey, since Defendant is described as a citizen of only that State. *See* 28 U.S.C. § 1332(c)(1).

[3] Plaintiff has claimed damages of $127,097.08 for an unpaid invoice and $405,742.50 for lost profits.

originally filed with the Barry County Circuit Court in January 2005, alleging two counts of breach of contract as to a contract for the sale of goods governed by Michigan statute (Article Two of the Uniform Commercial Code) and Michigan common law. The suit was then removed by notice of removal filed in this Court on or about February 15, 2005.

Since there are competing motions for summary judgment, the facts of the contract dispute will be interpreted in a light most favorable to the party opposing each summary judgment motion. The basic facts of this controversy are not complicated and predict a legal dispute. Defendant, a government contractor, had discussions with Plaintiff about its needs for automotive engine parts to be supplied the Army. These discussions were negotiated in part by Defendant's independent sales agent–Gary Zeff. At the time, Zeff presented Defendant's purchasing/safety manager, Lori Mlynarski, with a requirements contract signed by Plaintiff's sales manager, Tony McCurdy, for the production of the military parts. (Mlynarksi Dep. 32; Def.'s Br. in Resp., Ex. 11; Zeff Dep. 61-74.) The contract was titled as a "Confidential Quote," but was in fact a requirements contract with terms specifying that Defendant was obligated to purchase a minimum number of sets of automobile components for each contract year during the five-year contract period. (Pl.'s Mot. for Partial Summ. J., Ex.D at 1.) The contract contained all necessary contract terms including parts numbers, pricing, quantities, payment terms, minimum annual purchase requirements, average monthly requirements, and a first shipping date. (*Id.*) It also included a term requiring that any changes to the contract be made in writing. (*Id.*) The contract provided for sufficient legal consideration–payment in exchange for parts. (*Id.*) The contract, on the second page, had a signature line for Mylnarski as well as a request that she "fax back" a "signed copy of this contract." (*Id.* at 2.)

2

Mylnarski did not initially sign the contract. Rather, she delayed and Zeff urged her to return it, telling her that it was a non-binding price quotation; after that reassurance, she signed it and sent it to Plaintiff's offices by tele-facsimile. (Mlynarksi Dep. 32; Def.'s Br. in Resp., Ex. 11; Zeff Dep. 61-74.) It is not disputed that she had full authority to enter binding contracts on behalf of Defendant. (Mylnarksi Dep. 55.)

Plaintiff then began producing the parts for its first invoice shipment. Shortly thereafter, Plaintiff was informed through Zeff that Defendant's need for parts was delayed. In January 2004, Defendant informed Plaintiff that it did not need or want the parts, nor would it pay for them, because the Army contract had not been granted. This litigation followed.

**STANDARDS FOR SUMMARY JUDGMENT**

These summary judgment motions are brought pursuant to Federal Rule of Civil Procedure 56. Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323.

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255). The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**LEGAL ANALYSIS**

Plaintiff's Motion for Partial Summary Judgment asks for a partial judgment finding as a matter of law that a valid contract was executed between the parties notwithstanding the contrary representations of the sales agent. Defendant's Motion for Summary Judgment asks for judgment on the ground that the representations of Zeff constituted fraud which prevented the formation of a valid contract.

In a diversity case, federal courts apply the substantive law of the state in which the court sits, including state law regarding choice of law. *Erie R.R.. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 496 (1941). In this case, the parties agree that Michigan law governs both choice of law and the execution, formation and enforcement of the purported contract.

As to the fraud issue, no matter how this issue is described or defined under Michigan law, Defendant loses. "One who signs a contract cannot seek to avoid it on the bases that he did not read it or that he supposed that it was different in its terms." *Stopcynski v. Ford Motor Co.*, 503 N.W.2d 912, 913 (Mich. Ct. App. 1993) (citing *Paterek v. 660 Limited,* 465 N.W.2d 342, 345 (Mich. Ct. App. 1990)). Indeed, the facts of this case are very similar to both *Stopcynski* and *Paterek*. In

4

*Stopcynski*, the Michigan Court of Appeals found unpersuasive the claim of a plaintiff who had accepted a job transfer to an at-will position (as stated in a written contract) based on alleged prior assurances to the plaintiff that he would be given for-cause employment.  Similarly, in *Paterek*, a plaintiff who had signed a release to participate in softball, could not claim that the release was ineffective because it had been described to him as a team roster.

In reaching such holdings, the Michigan courts have acted consistent with their history of requiring able-minded adults (except in trust relationships) to read and be bound by the terms of their written contracts.  The case of *Draeger v. Kent County Sav. Ass'n*, provides a classic statement of law as to contract formation:

> In the instant case, the testimony shows that the plaintiff Emil Draeger was an intelligent man.  He could read and write and had some experience in the purchase of stocks.  No artifice, no means fraudulent or otherwise, were used to prevent him from reading the contract, which was simple and understandable to a man of ordinary intelligence. He chose to sign it without reading.  If he had read it, he would have been informed that any statement made by the agent and not contained in the writing was not binding on the association.  If he had read it, he would have been informed that it was not the same as the oral contract which he had made with the agent.  It was his duty to read it before signing, not alone for his own protection but as well for the defendant association.
>
> An examination of the authorities will show that courts have gone far to protect ignorant and illiterate persons who have been induced to sign contracts for the purchase of worthless stocks.  But in this case, as far as appears by the record, the plaintiff made a good investment in shares of a building and loan association that is financially sound and in a prosperous condition.  There seems to be no reason why this court should assume to act as guardian for them in this transaction.  To allow persons of intelligence and mature age to repudiate their written contracts, which they have an opportunity to read before signing and can read, would lend uncertainty to business transactions and render the making of contracts unsafe.

*Draeger v. Kent County Sav. Ass'n*, 219 N.W. 637, 638 (Mich. 1928).  *See also T.E.A.M. Scaffolding Sys., Inc. v. United Bhd. of Carpenters & Joiners,* 29 Fed. Appx. 414, 416 (8th Cir. Jan. 24, 2002) (citing *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 461 (6th Cir. 1986)).

In this case, we have a case just like *Draeger*. The written contract informed Defendant that it was bound by the contract terms--contrary to previous statements of Zeff--and informed Defendant that the written terms could only be modified by another signed writing. *See also Kirco Realty & Dev., Ltd. v. Bankers Trust Co.*, 1997 WL 33350571, *1 (Mich. Ct. App. 2002). Under these circumstances, reliance upon Zeff's self-interested assessment was wholly unreasonable and does not support an inference of fraud. *See also Rose v. Nat'l Auction Group, Inc.*, 646 N.W.2d 455, 462 (Mich. 2002). Further, the self-serving statements by Zeff–as to the purported effect of signing the agreement–were statements of opinion, not fact. *See Burlingame v. B.E. Taylor Realty Co.*, 225 N.W. 562, 564 (Mich. 1929). As to that opinion, Defendant scarcely cannot rely upon a legal opinion by one unqualified to give it and who has an obvious self-interest in the transaction, especially where the representation is directly contradicted by the writing.[4] Furthermore, no evidence suggests that Zeff made the statement with a fraudulent intent or purpose.

Defendant also argues that the writing was ambiguous (so as not to give rise to a contract) because both the words "contract" and "confidential quote" were contained on the document. This argument overlooks the actual language of the document and the process of contract formation. The document contained a single heading describing it as a "CONFIDENTIAL QUOTE." This was an accurate description of its legal effect–as a "quote" or offer. It became a contract only when Mlynarski signed it. The document was not ambiguous as a matter of law.

---

[4] To the extent that the statement was a future prediction about what Plaintiff might do, it was also not the kind of promise upon which one may rely. *See Scott v. Harper Recreation, Inc.*, 506 N.W.2d 857, 860 (Mich. 1993). The record does not support an inference of fraudulent inducement of any kind.

For these reasons and the arguments made by Plaintiff in its Brief in Opposition, Plaintiff must prevail as a matter of law on its Motion for Partial Summary Judgment and Defendant cannot prevail as to its Counter-Motion for Summary Judgment.  As a matter of law, the Court finds that the signed writing constituted a valid and enforceable contract that was not vitiated by fraud.

Defendant's Motion for Summary Judgment and Motion *in Limine* asks the Court to find that Plaintiff's Rule 26(a) disclosures were inadequate and were insufficient as a matter of law to prove lost profit damages.  The briefing of this issue does not show that relief is warranted under Rule 37(a) in that no discovery violation has been shown.  Likewise, the record does not support either a determination of damages as a matter of law, or an order limiting the proofs at trial as to damages.[5]  Therefore, the Motion will be denied.

## CONCLUSION

For the reasons given, a Partial Judgment shall enter granting Plaintiff's Motion for Partial Summary Judgment, but denying Defendant's Motions and preserving the issue of damages for trial.

DATED in Kalamazoo, MI:  
February 6, 2006

 /s/ Richard Alan Enslen  
RICHARD ALAN ENSLEN  
SENIOR UNITED STATES DISTRICT JUDGE

---

[5]Plaintiff suggests in its Reply that the Court should limit Defendant to its Rule 26(a) disclosures.  This kind of order appears unnecessary and may work contrary to the purposes of Rule 26(e), which foresees the possibility of supplemental disclosures being used as part of proofs in appropriate cases.